**Jerry Lee CUDJO, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–73–430.**

Court of Criminal Appeals of Oklahoma.

April 24, 1974.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Charles P. Rainbolt, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Jerry Lee Cudjo, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–73–967, for the offense of Murder. His punishment was fixed at a term of life imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Feleta Elaine King testified that on September 18, 1972, at approximately 9:30 p. m. she was driving south on Westminister Road. She noticed a patrol car which followed her for a short distance. A car with bright lights met her going north, the patrol car turned around and went north. She proceeded to the liquor store, then on to a grocery store and then proceeded north on her way home. She passed a patrol car on the side of the road facing north. The lights were flashing but she could see no person and no other car around.

Raymond Lee Tillman testified that on September 18, 1972, at approximately 9:30 or 10:00 p. m. he was driving north on Westminister Road. He passed a patrol car parked on the roadside with the headlights on and saw a policeman lying in front of the car. No other car was around. He went to notify a Nicoma Park policeman.

Robert L. Houston testified that he was driving north on Westminister at approximately the 2300 block on September 18, 1972, between 9:30 and 10:00 p. m. and passed a patrol car with its lights flashing. No other car was around. He saw a person lying in front of the car and sought to notify police, but they had already been notified by witness Tillman. He later learned that the body was that of highway patrolman, Eugene Ake.

Dr. A. J. Chapman, Chief Medical Examiner for the State of Oklahoma, testified that on September 18, 1972, he performed an autopsy on the body of one Robert Eugene Ake. One bullet wound entered the bone involving the teeth, and passed through and lodged against his spinal column in the neck. A second bullet wound entered the chest and passed through the body, lodging near the spinal column. In Dr. Chapman's opinion either wound would have been fatal. He recovered the bullets and turned them over to Carl Cloud, of the State Bureau of Investigation.

Jim Roberson, police officer for the City of Nicoma Park, testified that on September 18, 1972, Raymond Tillman notified him that a patrol trooper was lying in front of his car on Westminister. Officer Roberson proceeded there and observed the patrolman lying in front of his car. Finding no pulse, Officer Roberson called for an ambulance. He knew the trooper to be Robert Ake.

Carl Cloud, a technician for the Oklahoma State Crime Bureau, testified that he received two items of evidence from Dr. Chapman and turned them over to Ray Lambert, an Oklahoma State Crime Bureau firearms examiner.

Ray Lambert, firearms examiner of the Oklahoma State Crime Bureau of Investigation, testified that he tested two bullets, one was so fragmented all he could determine was that it was a Remington semijacketed bullet. The other he could determine was a Remington .38 caliber semijacketed bullet that could be fired from either a .38 caliber or .357 caliber gun. A shirt he examined had powder marks on it deposited from a gun approximately 30 inches or less away.

Johnie Potts testified that he was employed as a Highway Patrolman with the Oklahoma Highway Patrol Department and had known Officer Ake over three and one-half years. He knew Officer Ake customarily carried a Smith & Wesson model 28 highway patrol .357 magnum pistol with a barrel length of approximately four inches.

Quincy Barnett, jailer for the Oklahoma County Jail, testified that Officer Ake visited the jail on September 18, 1972, and he checked his pistol in to Barnett. It was a .357 magnum and Barnett had observed on previous occasions that Officer Ake's gun was a highway patrol model.

Pearley Mae McCauley testified that on September 18, 1972, she was at Wanda Ware's apartment. Others present were Lonnie Johnson, Wanda Ware, Barbara Beiard and Billie Golden. Later in the evening Claude Ramsey and the defendant arrived. She danced with the defendant and asked him "What are you doing with that big gun?" (Tr. 218). The gun was in the defendant's back pocket and the defendant replied that it was a B–B gun.

Barbara Jo Beiard testified that she was at Wanda Ware's apartment on September 18, 1972, and heard Pearley Mae McCauley ask defendant "What are you doing with that big gun?" She did not hear any reply. She later had a conversation with the defendant about Ake's death and defendant said he didn't want to talk about it and she should never ask him about it again. Defendant further stated, "are you crazy I didn't kill that highway patrolman." (Tr. 227).

Peggy Sue Goldsby testified that she was at Wanda Ware's apartment the night of September 18, 1972, and observed the defendant with a gun in his hand.

Wanda Jean Ware testified that on September 18, 1972, several people were at her apartment on that night when the defendant and Claude Ramsey came in about 10:00 p. m. Defendant had a large black gun with brown handles which had either highway patrolman or trooper stamped on it. The defendant returned to her house the next afternoon and she again observed the gun. With reference to the killing of trooper Ake, defendant told her "one day he said he did and the next day he said no he was just kidding." (Tr. 252). She had a conversation with Claude Ramsey in which he said "we shot him" referring to Ramsey and the defendant.

Lonnie D. Johnson testified that he, the defendant, and defendant's brother, Marshall, were on their way to work and upon approaching 36th street they observed a bunch of police cars and witness Johnson asked the defendant what was happening. The defendant replied "he had shot a policeman." Witness Johnson later saw a gun in the defendant's house in a trunk. It was a black gun with brown handles and was stamped "highway patrolman." Later he and his brother Wayne Johnson, went

to Wanda's house, got the gun and threw it in the North Canadian River.

Marshall Cudjo, defendant's brother, after being granted immunity, testified that he picked his brother up at Wanda Ware's apartment on September 18, 1972, to go to work. While driving down 36th street after they had passed a number of police cars, Marshall asked what was going on, to which defendant replied that a highway patrolman had been shot. Marshall then asked the defendant how did he know, and the defendant stated that we did it.

Claude George Ramsey, Jr., testified that he was riding with the defendant in the car the night of September 18, 1972. Defendant was driving and Ramsey was in the front passenger seat. The car was stopped on Westminister about 10:00 p. m. by trooper, Robert Ake, who asked for the defendant's driver's license. When the defendant did not produce one, Officer Ake had him dismount. The trooper then asked for Ramsey's identification. The defendant then stated to trooper Ake "I'm tired of you mother fuckers messing with me." (Tr. 338). The defendant then shot trooper Ake twice.

The defendant did not testify, nor was any evidence offered in his behalf.

█ The defendant's first proposition asserts that the verdict is not supported by the evidence. This Court has consistently held that it is the exclusive province of the jury to weigh the evidence and determine the facts, and where the verdict is based on probable testimony, the reviewing court will not interfere with the verdict. See Jackson v. State, Okl.Cr., 494 P.2d 358 (1972).

█ The defendant's second proposition asserts that the punishment is excessive. We find this proposition to be wholly without merit. The only punishment provided by law for the crime of Murder, at the time of the defendant's conviction, was life imprisonment, that being the sentence the defendant received.

█ The defendant's third proposition asserts that one juror failed to disclose on voir dire examination that he was a former law enforcement officer. We have carefully reviewed the voir dire examination of this juror and find that this question was never asked him, nor were there any questions specific enough to suggest to this juror that he disclose his former occupation.

██ The defendant's final proposition asserts that he was not tried by a jury of his peers. We have carefully reviewed the entire voir dire examination of the jury panel and the record does not reveal any intentional or systematic exclusion of Negroes from the jury panel; this being the basis of the defendant's argument, that he was not being tried by a jury of his peers. Constitutional requirements do not dictate that a proportional part of the jury be of the same race as the defendant. See Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed.2d 1692.

Finding no error sufficient to warrant modification or reversal it is our opinion that the judgment and sentence appealed from, should be, and the same is hereby, affirmed.

BLISS, P. J., and BRETT, J., concur.